

**FILED**

JUL 1 8 2011

Phil Lombardi, Clerk
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. | **WALTER E. BUSBY, JR.** | ) |
| | | ) |
| | Plaintiff, | ) |
| | | ) |
| v. | | ) **Jury Trial Demanded** |
| | | ) |
| 1. | **CITY OF TULSA;** | ) |
| 2. | **CHARLES W. JORDAN, individually** | ) **11 CV - 4 4 7 CVE   PJC** |
| | **and in his official capacity as Chief of** | ) |
| | **Police;** | ) |
| 3. | **WALTER EVANS, individually** | ) |
| | **and in his official capacity as Major,** | ) |
| | **Tulsa Police Department,** | ) |
| | | ) |
| | Defendants. | ) |

### COMPLAINT

COMES NOW Plaintiff, Walter E. Busby, Jr. (hereinafter "Plaintiff" or "Captain

Busby"), and brings this Complaint against the above-named Defendants:

### INTRODUCTORY STATEMENT

1.      Captain Busby is an African-American male. He has been employed by the Tulsa

Police Department ("TPD"), the principal law enforcement agency for Defendant City of Tulsa

("City"), for approximately 30 years. He has held the rank of Captain (formerly Lieutenant)

since March 1996. During Captain Busby's entire career, he has served the Tulsa community

with pride, honor and distinction.

2.      Captain Busby is also known as an advocate and activist. Over his three decades

with the TPD, Captain Busby has often spoken up and challenged discrimination, inequality and

bias, both within the TPD and the community-at-large. He has fought courageously for change

in the way the TPD treats its officers and Tulsa's citizens alike.

1



3.     Captain Busby has paid a price for his activism and open criticism of the TPD's policies and practices.   He has often been subjected to retaliation, harassment and other mistreatment.

4.     Unfortunately, the mistreatment continues to this day.   Captain Busby has recently been subject to racially disparate treatment, retaliation and harassment in the workplace. Captain Busby has been forced to bring this legal action to obtain a remedy for ongoing and materially adverse employment actions taken against him.   These adverse employment actions have caused him humiliation, damage to his reputation and significant risk of harm to future employment prospects.   In essence, Captain Busby has been defamed, exiled within the Department, and his ability to supervise has been greatly undermined.   All of these adverse actions and effects stem from Captain Busby's race and/or his political beliefs and speech.

## JURISDICTION AND VENUE

5.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of and to redress deprivations of rights secured by:

(A)     The First and Fourteenth Amendments to the United States Constitution as enforced by the Civil Rights Act of 1871, 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

(B)     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2000e-17 ("Title VII") which provides for injunctive and other relief against discrimination in employment on the basis of race, religion, sex and national origin, and against retaliation for opposing unlawful employment practices or participating in proceedings to enforce rights under Title VII.

2

6.     The jurisdiction of this Court is also invoked under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the First and Fourteenth Amendments to the United States Constitution, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2000e-17 and 42 U.S.C. § 1983.

7.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

### A.     Plaintiff

8.     Plaintiff is an African-American male and resident of Tulsa County, Oklahoma. He has been employed by the TPD since 1981.  He has held the rank of Captain (formerly Lieutenant) since March 1996.

### B.     Defendants

9.     Defendant City is a municipality incorporated as a city under the laws of the State of Oklahoma and is located in Tulsa County in the State of Oklahoma.  The City is authorized, pursuant to Oklahoma statutory law and the charter of the City of Tulsa, to establish, maintain and supervise the operations of the TPD, Okla. Stat. tit. 11, § 22-101 (1991).  The policies, procedures, customs, orders and actions which are alleged herein were promulgated, implemented, ratified or otherwise sanctioned under color of law by the City and therefore constitute acts of the State within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

10.     Defendant Charles W. "Chuck" Jordan is the Chief of Police for the TPD.  At relevant times, he was an agent, servant, and/or employee of the City, acting under color of state law.  As the Chief of Police, he is responsible for creating, adopting, approving, ratifying, and

3

enforcing the rules, regulations, policies, practices, procedures, and/or customs of the TPD, including the policies, practices, procedures, and/or customs that violated Plaintiff's constitutional rights as set forth in this Complaint. Defendant Jordan is sued individually and in his official capacity as the Chief of Police.

11.     Defendant Walter Evans is a Major for the TPD. At all relevant times, he was an agent, servant, and/or employee of the City, acting under color of state law. As a Major, Defendant Evans is responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the TPD, including the policies, practices, procedures, and/or customs that violated Plaintiff's constitutional rights as set forth in this Complaint. Defendant Evans is sued individually and in his official capacity as a Major.

## FACTUAL ALLEGATIONS

12.     On January 13, 2010, Captain Busby's immediate supervisor, Major Walter Evans, had a conversation with him about the lack of African-American officer participation in TPD functions. It was in the context of this conversation that Major Evans first informed Captain Busby that, *if* he was on duty on January 18, 2010, Major Evans wanted Captain Busby to participate in the Martin Luther King ("MLK") parade. Indeed, it was in the context of this conversation concerning the lack of African-American officer participation in events like the MLK parade that Major Evans first clarified that, *if* Captain Busby was on duty on January 18, 2010, Major Evans was *ordering* him to participate in the MLK parade. Major Evans admitted as much in an Interoffice Correspondence, dated January 15, 2010:

> I *admit* that I stated that I was *embarrassed that few African American officers participate* in Department-sponsored ceremonies, such as the Memorial Service, the MLK Parade and the annual Awards Banquet... ***The fact that we both share the same***

*race as Dr. King and that the parade is held in the African American community is consequential.*

(Emphasis added.)  Plainly, the order to participate in the MLK parade was based upon Captain Busby's race.

13.     During the January 13, 2010 conversation, Captain Busby informed Major Evans that he did not want to participate in the MLK parade for political reasons.  As Captain Busby informed Major Evans, he believed the TPD was attempting to use his appearance in the MLK parade to (incorrectly) signal to the black community that Captain Busby endorsed the TPD's actions in the community as being racially unbiased and fair.[1]  On the contrary, Captain Busby has long protested the racially disparate mistreatment of black citizens by the TPD.  Thus, in order to avoid any confrontation, Captain Busby asked Major Evans if he could simply take a couple of hours of holiday leave during the MLK parade.

14.     Major Evans initially approved Captain Busby's request to take holiday leave during the MLK parade.  However, to Captain Busby's surprise, Major Evans subsequently denied Captain Busby's request.  In the January 15, 2010 memo denying Captain Busby's leave request, Major Evans stated and ordered as follows:

> "After careful consideration, I have decided to deny your request.  You will report to work as scheduled that day and one of your assignments will be to participate as a representative of [Mingo Valley Division] staff at the MLK parade."

Major Evans further ordered Captain Busby to "[a]cknowledge receipt of this message" by the close of business on January 15, 2010 (which happened to be Captain Busby's day off).

---

[1]     Captain Busby has been on the MLK Society Board for approximately 15 years, frequently working with the MLK Society to address issues.  Indeed, Captain Busby has specifically worked with the MLK Society to determine a new parade route for the purposes of deterring incidences of violence.

15.     In compliance with Major Evans' order that Captain Busby acknowledge receipt, he submitted an Interoffice Memorandum to Major Evans on the afternoon of January 15, 2010. In that memorandum, Captain Busby requested reconsideration of the order to participate in the MLK parade, noting that the order was invalid (under TPD Rule 6) as being based on race. Captain Busby also protested the order on the grounds that he was "unaware of any other Captain, on duty or otherwise who has been ordered to participate in this parade."

16.     Major Evans refused Captain Busby's request for reconsideration.  While Major Evans unremarkably denied the order to participate in the MLK parade was based on race, as shown *supra*, he admitted the order was made in the context of his concerns about lack of African-American officer participation in the MLK parade and similar events.   In addition, Major Evans stated that Captain Busby's race being the same as Dr. King was "*consequential*" (emphasis added).   Lastly, Major Evans stated he could not "confirm []or deny that no other captain" had been ordered to participate in the parade.  *Id.*

17.     In fact, Captain Busby was the *only* officer ordered to participate in the MLK parade.  Participation was voluntary for all other officers.

18.     Major Evans' denial of Captain Busby's request for reconsideration, and the statements made in his January 15, 2010 memorandum, confirmed that the order to participate in the MLK parade was racially motivated.  Nonetheless, because Captain Busby had been given a direct order, he did participate in the MLK parade on January 18, 2010 under protest.

19.     Since the MLK parade incident, and Captain Busby's subsequent filing of internal discrimination complaints within the Department and with the City of Tulsa's Human Resources ("HR"), Captain Busby's working environment became progressively more hostile.

20.    On March 30, 2010, Captain Busby submitted an Interoffice Correspondence to Chief Chuck Jordan regarding "Hostile Work Environment." In this correspondence, Captain Busby raised the MLK parade issue and other mounting issues of harassment and discrimination. However, the Chief provided no relief.

21.    The situation reached a tipping point later in the spring of 2010, when, on May 18, 2010, Major Evans informed Captain Busby that, as of August 29, 2010, he would be assigned to Shift 4 (4:00 p.m. – 2:00 a.m.). Captain Busby is the senior captain in the field. It is unprecedented for the senior captain in the field to be assigned to this undesirable shift. There is a clear causal connection between the move to Shift 4 and Captain Busby's engaging in opposition to discrimination. By taking the unprecedented and retaliatory action of placing Captain Busby on Shift 4, Defendants have humiliated Captain Busby, damaged his reputation and undermined his ability to supervise effectively. Being on Shift 4 has also taken irreplaceable time away that Captain Busby would normally have spent with his family. In order to mitigate the effects of this materially adverse employment action, Captain Busby has been forced to use up substantial amounts of his accrued vacation time, which he spent years accumulating.

22.    This materially adverse employment action prompted Captain Busby to file his initial discrimination complaint with HR on June 18, 2010.

23.    To this day, Captain Busby remains on Shift 4, despite numerous requests to move to a shift befitting his position as senior captain in the field. The City has flatly refused to change Captain Busby's shift as requested.

24.    The June 18, 2010 discrimination complaint raised matters of public concern, including, but not limited to, the racially disparate treatment of black citizens by the TPD and Captain Busby's belief that the TPD wanted him to participate in the MLK parade for political

7

reasons, *i.e.*, to signal (incorrectly) that Captain Busby approved of the TPD's policing in the black community as being racially unbiased and fair.  The June 18 discrimination complaint also raised allegations in opposition to racial discrimination.

25.     *Less than two weeks* after Captain Busby filed his discrimination complaint with HR, Major Evans gave Captain Busby the *lowest performance evaluation* he had received *in his entire supervisory career* with the Department.   Importantly, the performance evaluation raises the MLK parade incident as a basis for lowering Captain Busby's ratings.   The evaluation is replete with other inconsistencies, falsehoods and overly subjective criticisms.   For example, Major Evans claimed that, at the time of the evaluation, Captain Busby had failed to review "29 policies and examinations..."   This is demonstrably false.   Documentation available to Major Evans at the time of the evaluation showed that as of June 14, 2010, Captain Busby only had seven policies outstanding.   In another section of the evaluation, Major Evans lowered Captain Busby's ratings for allegedly "sitting alone" at the monthly COMPSTAT meetings.   In truth, however, other attendees did sit next to Captain Busby and he interacted with them.   More importantly, Captain Busby's choice of seat at COMPSTAT meetings was clearly an improper justification to lower his ratings.

26.     Captain Busby appealed the performance evaluation, raising, in detail, the specific deficiencies therein.   However, Captain Busby received no relief, and this negative performance evaluation is now part of his permanent personnel record.

27.     All of the surrounding facts, including the temporal relationship with the filing of Captain Busby's discrimination complaint, indicate that this negative performance evaluation, a materially adverse employment action, was retaliatory.

8

28.     Captain Busby brought all of these issues to the attention of his supervisors, including Chief of Police Chuck Jordan and Deputy Chief Dennis Larsen, and received no relief. Captain Busby further sought relief from the Mayor of Tulsa, Dewey Bartlett, but again, received none.   Indeed, the investigation of Captain Busby's internal complaints of discrimination, retaliation and harassment was itself patently biased.   Particularly, the City's HR investigator completely ignored evidence, including documentary evidence, provided by Captain Busby, while giving full credit to Major Evans' version of events.   Ultimately, the Civil Service Commission accepted HR's recommendation to deny Captain Busby's complaint based upon the biased findings of the investigator.

29.     The discriminatory and retaliatory actions taken against Captain Busby have been approved of and ratified by those with final policy-making authority within the City of Tulsa, including the Civil Service Commission, the Mayor and Chief of Police.

## CAUSES OF ACTION

### First Cause of Action
(Title VII, 42 U.S.C. § 2000e-2(a) and (m) and § 2000e-3)

30.     Plaintiff hereby incorporates by reference ¶¶ 1-29, *supra.*

31.     Plaintiff is an "employee" of the City within the meaning of Section 701 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-(f).

32.     Defendant City is an "employer" within the meaning of Section 701 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-(b).

**A.     Disparate Treatment Race Discrimination**

33.     Plaintiff is a member of a protected class, the African-American race.

34.     Plaintiff has suffered multiple adverse employment actions, as detailed *supra*, including being forced to participate in the MLK parade against his political beliefs and being the only senior captain in the field ever assigned to Shift 4.

35.     Similarly situated employees outside of the protected class were treated differently.  In particular, Plaintiff was ordered to participate in the MLK parade *because of* his race, while other similarly situated employees were not ordered to participate in the parade.  In addition, Plaintiff is the only senior captain in the field ever forced to Shift 4, while other similarly situated captains are placed in more desirable shifts befitting their rank.

**B.     Title VII Retaliation**

36.     Plaintiff has engaged in protected opposition to discrimination in the form of complaints of discrimination filed with Human Resources, the Civil Service Commission, the Chief of Police, the Mayor and Major Evans.

37.     A reasonable employee would have found the challenged actions adverse.

38.     A causal connection exists between the protected activity and material adverse actions taken against Plaintiff.  In particular, as demonstrated *supra*, each time Plaintiff raised a complaint of discrimination, a materially adverse action followed.

39.     The City's violations of Title VII have adversely affected Plaintiff's employment.

40.     The City's violations of Title VII are intentional and have and will continue to adversely affect Plaintiff.  Accordingly, it is necessary and appropriate to enjoin Defendant from engaging in these unlawful employment practices and to order other affirmative equitable relief as may be appropriate.

**Second Cause of Action**
(Freedom of Speech, Expression and Association – First Amendment)

41.     Plaintiff hereby incorporates by reference ¶¶ 1-40, *supra*.

42.     By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, ratified, and enforced under color of state law, Defendants have deprived Plaintiff of his rights of free speech, expression and association guaranteed by the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

43.     Defendants ordered and forced Plaintiff under penalty of adverse employment consequences to: (a) conform with an ideology contrary to Plaintiff's expressed political beliefs in direct violation of Plaintiff's right to freedom of speech and expression; and (b) associate with others contrary to his political beliefs and convictions in violation of his right to expressive association.

44.     As a direct and proximate result of Defendants' violations of Plaintiff's rights protected by the First Amendment, Plaintiff has suffered irreparable harm, including the loss of his fundamental constitutional rights, adverse employment consequences, humiliation and emotional pain and suffering entitling him to declaratory and injunctive relief and damages.

### Third Cause of Action
(Retaliation – First Amendment)

45.     Plaintiff hereby incorporates by reference ¶¶ 1-44, *supra*.

46.     As set forth *supra*, beginning with Plaintiff's statements of the political reasons he did not wish to participate in the MLK parade, Plaintiff made several statements, including discrimination complaints, that touched on matters of public concern.

47.     Plaintiff's interest in commenting on matters of public concern outweighed Defendants' interests in promoting the efficiency of public service.

48.     Plaintiff's protected speech was a substantial or motivating factor behind the adverse employment actions taken against him.

49.     Defendants' retaliation against Plaintiff was deliberate and intentional.

50.     As a direct and proximate result of Defendants' retaliation against him in violation of Plaintiff's rights protected by the First Amendment, Plaintiff has suffered irreparable harm, including the loss of his fundamental constitutional rights, adverse employment consequences, humiliation and emotional pain and suffering entitling him to declaratory and injunctive relief and damages (including punitive damages).

### Fourth Cause of Action
(Equal Protection – Fourteenth Amendment)

51.     Plaintiff hereby incorporates by reference ¶¶ 1-50, *supra.*

52.     By reason of the aforementioned acts, policies, practices, procedures, and/or customs created, adopted, and enforced under color of state law, Defendants deprived Plaintiff of the equal protection of the laws guaranteed under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

53.     Plaintiff is a member of a protected class, the African-American race.

54.     Plaintiff has suffered multiple adverse employment actions, as detailed *supra*, including being forced to participate in the MLK parade against his political beliefs and being the only senior captain in the field ever assigned to Shift 4.

55.     Similarly situated employees outside of the protected class were treated differently. In particular, Plaintiff was ordered to participate in the MLK parade *because of* his race, while other similarly situated employees were not ordered to participate in the parade. In addition, Plaintiff is the only senior captain in the field ever forced to Shift 4, while other similarly situated captains are placed in more desirable shifts befitting their rank.

12

56.     As a direct and proximate result of Defendants' racial discrimination against him in violation of Plaintiff's rights protected by the Fourteenth Amendment, Plaintiff has suffered irreparable harm, including the loss of his fundamental constitutional rights, adverse employment consequences, humiliation and emotional pain and suffering entitling him to declaratory and injunctive relief and damages (including punitive damages).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests this Court to:

A.      declare that Defendants violated Plaintiff's constitutional rights as set forth in this Complaint;

B.      declare that the City violated Plaintiff's statutory rights as set forth in this Complaint;

C.      enjoin the enforcement of Defendants' unconstitutional acts, policies, practices, procedures, and/or customs that were the moving force behind the violation of Plaintiff's constitutional rights as set forth in this Complaint, and grant Plaintiff all the equitable relief to which he is entitled under 42 U.S.C. §§ 1983 and 1988;

D.      enjoin the City and grant Plaintiff all the equitable relief to which is he entitled under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2000e-17;

F.      award Plaintiff reasonable costs and expenses, including attorneys' fees, pursuant to 42 U.S.C. § 1988 and 2000e-5(k);

G.      award Plaintiff nominal, compensatory and punitive damages in an amount to be determined at trial; and

H.      grant Plaintiff such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Robert M. Blakemore, OBA #18656
Louis W. Bullock, OBA #1305
Bullock Bullock & Blakemore PLLC
110 West Seventh Street Suite 707
Tulsa, Oklahoma 74119
Phone:  (918) 584-2001
Fax:  (918) 779-4383

**ATTORNEYS FOR PLAINTIFF**