**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| WALTER E. BUSBY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-cv-447-GKF-PJC |
| | ) | |
| CITY OF TULSA; | ) | |
| CHARLES W. JORDAN, individually and | ) | |
| in his official capacity as Chief of Police; | ) | |
| DENNIS LARSEN, individually and | ) | |
| in his official capacity as Deputy Chief, | ) | |
| Tulsa Police Department; | ) | |
| WALTER EVANS, individually and | ) | |
| in his official capacity as Major, | ) | |
| Tulsa Police Department, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION & ORDER**

This matter comes before the court on the Motion to Dismiss [Dkt. #15] of defendant Dennis Larsen, individually and in his official capacity as Deputy Chief of the Tulsa Police Department ("Larsen"). Larsen seeks dismissal of the claims against him pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## I. The Standard of Review

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The

plausibility requirement is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statement, do not suffice." *Id.* "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief." Id. at 679, quoting Fed. R. Civ. P. 8(a)(2).

The Tenth Circuit has noted that in a § 1983 action it is "particularly important" that "the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the [government]." *Kansas Penn Gaming LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).

Where, as here, a qualified immunity defense is asserted in a 12(b)(6) motion, courts "apply a heightened pleading standard, requiring the complaint to contain 'specific, non-conclusory allegations of fact sufficient to allow the district court to determine that those facts, if proved, demonstrate that the actions taken were not objectively reasonable in light of clearly established law.'" *Dill v. City of Edmond, Okla.*, 155 F.3d 1193, 1204 (10th Cir. 1998) (quoting *Breidenbach v. Bolish*, 126 F.3d 1288, 1293 (10th Cir. 1997)).

## II. Allegations of the First Amended Complaint

Plaintiff Walter E. Busby, Jr. ("Busby") is an African-American male. [¶1, First Amended Complaint, Dkt #7]. Busby has held the rank of Captain in the Tulsa Police Department ("TPD") since 1996. [¶8].

Defendant Dennis Larsen is a Deputy Chief for the TPD. [¶11]. Busby alleges that, as Deputy Chief, Larsen "is responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the TPD, including the policies, practices, procedures, and/or customs that violated constitutional rights as set forth in this Complaint." [¶11].

On January 13, 2010, defendant Major Walter Evans, who is also African-American, had a conversation with Busby about the lack of African-American officer participation in TPD functions. Major Evans informed Busby that, if Busby was on duty on January 18, 2010, Major Evans was ordering Busby to participate in the Martin Luther King parade. [¶13]. Busby informed Major Evans that he did not want to participate in the parade for political reasons, because "he believed the TPD was attempting to use his appearance in the MLK parade to (incorrectly) signal to the black community that Captain Busby endorsed the TPD's actions in the community as being racially unbiased and fair." [¶14]. Busby sought permission to take holiday leave during the parade, but Major Evans denied the request. [¶15]. Busby alleges that Major Evans' order to participate in the parade was racially motivated. [¶19]. Captain Busby participated in the parade under protest, and subsequently filed discrimination complaints with TPD and the City of Tulsa Human Resources Department. [¶¶ 19, 20].

In February, 2010, Major Evans gave Captain Busby a negative midterm evaluation. [¶21]. Busby also alleges that Major Evans "improperly appointed a sergeant to Captain Busby's

post as acting shift commander when Captain Busby was off duty." *Id.* Busby then requested and received a meeting with Deputy Chief Larsen to complain about hostile working conditions. *Id.* During the meeting, Larsen "indicated he would discuss the issues with Major Evans, [but] Deputy Chief Larsen provided no relief, and the problems intensified. Thus, Deputy Chief Larsen ratified the discriminatory, adverse and unconstitutional actions taken against Captain Busby" *Id.*

On May 18, 2010, Major Evans moved Captain Busby to "Shift 4," which begins at 4:00 p.m. and ends at 2:00 a.m. [¶24]. Busby alleges that he is "the senior captain in the field," and that "it is unprecedented for the senior captain in the field to be assigned to this undesirable shift." *Id.* Busby alleges that, in a May 18, 2010 email, Deputy Chief Larsen ratified the decision to assign him to Shift 4. [¶25].

On June 18, 2010, Busby filed a discrimination complaint with the City's Human Resources Department. [¶28]. Within two weeks thereafter, Major Evans gave Captain Busby a negative performance evaluation. [¶29]. On July 7, 2010, Captain Busby appealed the performance evaluation to Human Resources, Chief of Police Charles W. Jordan and Deputy Chief Larson, asserting that the negative performance evaluation was in retaliation for the discrimination complaint he filed. [¶31]. The appeal was denied. Busby alleges that, by denying the appeal, Chief Jordan and Deputy Chief Larsen "approved of and ratified the retaliatory performance evaluation." *Id.*

Busby brings four causes of action. The first cause of action is a Title VII claim for disparate treatment race discrimination and retaliation. Busby's second cause of action is a § 1983 claim for violation of his First Amendment rights of freedom of speech, expression, and association. His third cause of action is a § 1983 claim of retaliation for exercising his First

Amendment rights, and his fourth cause of action is a § 1983 claim for violation of his Fourteenth Amendment rights of equal protection.

## III. The Title VII Claims

Larsen first seeks dismissal of the Title VII claims. Busby states in response that his Title VII claims are brought only against the City of Tulsa and not against any of the individual defendants. [Doc. 17, p. 4]. Larsen's motion to dismiss Busby's Title VII claims is moot.

## IV. Qualified Immunity

Larsen contends the § 1983 claims against him in his individual capacity should be dismissed because he is protected by qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant asserts qualified immunity, the plaintiff bears the burden of satisfying a strict two-part test. *Dodds v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010). The plaintiff must establish (1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct. . . .'" *McBeth v. Himes*, 598 F.3d 708, 716 (quoting *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009)).

It has long been the law that § 1983 does not allow a plaintiff to hold a government official individually liable for the unconstitutional conduct of his subordinates on a theory of *respondeat superior*. *Dodds*, 614 F.3d at 1194-1195. More recently, in *Iqbal*, 556 U.S. at 676,

the Supreme Court declared "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." The Court rejected the proposition that a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. *Id.* at 677. The Court observed that "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Therefore, "[i]n the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose . . . liability" on an official charged with violations arising from his or her superintendent responsibilities." *Id.* "Thus, when a plaintiff sues an official under . . . § 1983 for conduct 'arising from his or her superintendent responsibilities," the plaintiff must plausibly plead . . . not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds*, 614 F.3d at 1198.

The year following the Supreme Court's decision in *Iqbal*, the Tenth Circuit held that the following basis of § 1983 liability survives: "§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which 'subjects, or causes to be subjected' that plaintiff 'to the deprivation of any rights . . . secured by the Constitution . . . .'" *Dodds*, 614 F.3d at 1199. "A plaintiff may therefore succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* For

example, a supervisor who has "deliberately enforced or actively maintained the policies in question" may be subject to liability under § 1983. *Id.* at 1204.

The Court reviews each of Busby's allegations regarding Larsen to determine whether Busby has stated a claim against Larsen in his individual capacity.

Busby alleges in Paragraph 11 of the First Amended Complaint that Larsen was "responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the TPD, including the policies, practices, procedures, and/or customs that violated Plaintiff's constitutional rights as set forth in this Complaint." However, Busby fails to identify any particular policy that (1) Larsen promulgated, created or implemented, or possessed responsibility for continued operation; that (2) caused the complained of constitutional harm.. *Dodds*, 614 F.3d at 1199. Rather, as more specifically set forth below, Busby's claims against Larsen are that Larsen "ratified" certain unconstitutional acts taken by Larsen's subordinate, Major Evans.

In Paragraph 21, Busby alleges he met with Larsen to complain about hostile working conditions following the negative midterm evaluation by Major Evans and the appointment of a sergeant as acting shift commander when Busby was off duty. Busby claims Larsen said he would discuss the issues with Major Evans, but Larsen provided no relief. Thus, Busby alleges, Larsen "ratified the discriminatory, adverse and unconstitutional actions taken against Captain Busby." Though Paragraph 21 alleges Larsen's knowledge of Major Evans' conduct, it does not sufficiently allege purposeful misconduct on the part of Deputy Chief Larsen. Busby "must plausibly plead . . . not only that [Major Evans] violated the Constitution, but that [Larsen] by virtue of his own conduct and state of mind did so as well." *Dodds,* 614 F.3d at 1198. Busby's allegation that Larsen "ratified" Major Evans' allegedly unconstitutional actions by providing no

subsequent relief is merely conclusory and does not sufficiently plead that Deputy Chief Larsen, "through [his] own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

In Paragraph 25, Busby alleges he complained that Major Evans' decision to move him to Shift 4 was inconsistent with past practice and part of a continuing hostile work environment. Busby claims Deputy Chief Larsen "ratified the decision to move Captain Busby to Shift 4 in a May 18, 2010 email." Although Paragraph 25 alleges that Deputy Chief Larsen knew of Major Evan's decision to move Busby to a new shift, and that Larsen approved his subordinate's decision, it fails to plausibly plead that Larsen, by virtue of his own individual conduct and state of mind, violated the Constitution.

In Paragraph 31, Busby states he appealed the low performance evaluation rendered by Major Evans to Chief of Police Chuck Jordan and Deputy Chief Larsen. In that appeal, Busby asserted that Major Evans had given him a low performance evaluation in retaliation for the discrimination complaint he filed with Human Resources. The appeal was denied. Busby alleges that "[b]y denying Captain Busby's appeal, the City, Chief Jordan and Deputy Chief Larsen approved of and ratified the retaliatory performance evaluation." Here, as was the case with Busby's previous allegations, Busby alleges Larsen had knowledge of Major Evans' allegedly discriminatory purpose. Knowledge, however, is not a sufficient basis upon which to state a claim of individual liability against a government official for the unconstitutional conduct of his subordinate. *Iqbal*, 556 U.S. at 677. Moreover, Busby's allegation that Larsen denied Busby's appeal of Major Evans' allegedly retaliatory performance evaluation does not sufficiently allege purposeful misconduct on the part of Deputy Chief Larson. The alleged misconduct was the retaliatory performance evaluation rendered by Larsen's subordinate. Upon review of the allegations contained in Paragraph 31 of the First Amended Complaint, the Court

concludes that Busby has failed to plausibly plead that Larsen, by virtue of his own conduct and state of mind, violated the Constitution. *Dodds*, 614 F.3d at 1198.

Upon review of Busby's claims against defendant Larsen, the Court concludes that Busby has failed to state a claim sufficient to overcome Deputy Chief Larsen's qualified immunity defense.

## V. Official Capacity Claim

A suit against a government official in his "official capacity" is not a suit against the official but rather is a suit against the official's office. *Brown v. Montoya*, 662 F.3d 1152, 1163 n. 8 (10th Cir. 2011) (quoting *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989)). An official capacity claim is "to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). To this end, a number of courts have dismissed individuals sued in their official capacities where the entity whose policies are at issue is also a defendant. *Ebonie S. v. Pueblo School Dist*. 60, 819 F. Supp. 2d 1179, 1185 (D. Colo. 2011); *Smith v. Bd. Of Cnty. Comm'rs*, 216 F. Supp. 2d 1209 (D. Kan. 2002); *McLin v. City of Chicago*, 742 F. Supp. 994, 997 (N.D. Ill. 1990) ("Because the [entity] is already a defendant, dismissing [the individual defendants] does not prejudice plaintiffs, and it clarifies and streamlines the pleadings."). The City of Tulsa is a named defendant in this case and is the entity which must be treated as the real party in interest with respect to plaintiff's official capacity claim against defendant Larsen. This Court therefore finds and concludes that defendant Larsen is superfluous as a named defendant in his official capacity, and dismissal of plaintiff's official capacity claim against Larsen is

warranted as a matter of judicial economy and efficiency. *Ebonie S.*, 819 F. Supp. 2d at 1185; *Smith*, 216 F. Supp. 2d at 1219.

WHEREFORE, the Motion to Dismiss of defendant Dennis Larsen [Dkt. #15] is moot as to plaintiff's Title VII claims, is granted with respect to plaintiff's § 1983 claims against Larsen in his individual capacity on qualified immunity grounds, and is granted with respect to plaintiff's § 1983 claims against Larsen in his official capacity.

DATED this 22nd day of May 2012.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT