## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **WALTER E. BUSBY, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 11-CV-447-JED-JFJ** |
| **v.** | ) | |
| | ) | |
| **CITY OF TULSA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Before the undersigned United States Magistrate Judge for a Report and Recommendation

is Plaintiff Walter E. Busby, Jr.'s Application for Attorney Fees and Expenses ("Motion for Fees")

(ECF No. 155).  The District Court found Plaintiff to be the prevailing party in this action and

referred the matter of attorney's fees and expenses to the undersigned.

For the reasons explained below, the undersigned **RECOMMENDS** that the Motion for

Fees be **GRANTED** in the amount of $336,682.50 in attorney's fees and $5,363.84 in expenses,

for a total award of $342,046.34.

### I.      Background

Plaintiff, an African-American man, is a Captain at the Tulsa Police Department ("TPD").

The disputes in this case stemmed from a racially discriminatory order TPD Major Walter Evans

("Evans") gave to Plaintiff to march in the 2010 Martin Luther King, Jr. Day Parade ("Parade")

with the TPD.  Plaintiff objected to participating in the Parade with the TPD because "he did not

think the TPD had made sufficient progress in areas regarding race relations."  ECF No. 146 at 3.

Plaintiff requested leave during the Parade, but Evans denied the request for leave and forced

Plaintiff to participate under protest.  Soon thereafter, Plaintiff began to experience adverse

consequences.  Specifically, Evans gave Plaintiff a negative performance evaluation in 2010 and

moved Plaintiff from the day shift to a late evening "fourth" shift, which forced Plaintiff to use a substantial amount of his accrued leave time.

Plaintiff brought this civil rights action on July 18, 2011, naming as Defendants the City of Tulsa ("City"), Tulsa Police Chief Charles W. Jordan ("Jordan"), and Evans.  Plaintiff then filed a First Amended Complaint, adding TPD Deputy Chief Dennis Larsen ("Larsen") as a fourth Defendant.  Plaintiff's First Amended Complaint sought relief on five claims: (1) a Title VII claim for disparate treatment race discrimination against the City; (2) a Title VII claim for retaliation against the City; (3) a claim pursuant to 42 U.S.C. § 1983 for violation of his First Amendment rights against the City and the individual officers; (4) a § 1983 claim for retaliation as a result of exercising his First Amendment rights against the City and the individual officers; and (5) a § 1983 claim for violation of his Fourteenth Amendment right of equal protection against the City and the individual officers.

On May 22, 2012, the Court granted Larsen's motion to dismiss on qualified immunity grounds.  On March 30, 2015, the Court granted in part a Motion for Summary Judgment filed on behalf of the remaining Defendants.  In that Order, the Court granted judgment in favor of Jordan and Evans on qualified immunity grounds, leaving the City as the sole remaining Defendant.  The Court further granted judgment on all of Plaintiff's § 1983 claims against the City.  Following these rulings, the Title VII claims for disparate treatment race discrimination and retaliation were the remaining claims for trial.

At the pretrial conference, Plaintiff waived jury trial and any claim for compensatory damages.  The Court conducted a bench trial on December 14, 15, and 16, 2015.  By written Order, the Court ruled in Plaintiff's favor on his claim of retaliation.  The Court concluded Plaintiff had suffered retaliation as a result of informing Evans and Jordan that the order to march in the Parade was racially discriminatory.  The Court awarded Plaintiff the following equitable relief: (1) the

City shall permanently remove Plaintiff's 2010 evaluation from his personnel file and ensure all copies are destroyed; and (2) the City shall compensate Plaintiff for 389 hours of accrued vacation leave and 64 hours of sick leave that he was forced to use as a result of his retaliatory transfer to the fourth shift.   The Court concluded Plaintiff was not entitled to judgment on his claim for disparate treatment discrimination because, although Evans' order was racially motivated, Plaintiff did not suffer an "adverse employment action" by being forced to march in the Parade.   The Court found Plaintiff to be the "prevailing party in this action" and determined Plaintiff "should be awarded a reasonable attorney fee as part of his recoverable costs."   ECF No. 146 at 22.

On February 21, 2018, Plaintiff filed the currently pending Motion for Fees, and it was referred for Report and Recommendation.   During a status conference, the undersigned informed the parties that the undersigned did not intend to conduct an evidentiary hearing but that the parties could submit supplemental affidavits or expert affidavits in support of their positions.[1]   Thereafter, Plaintiff submitted five affidavits in support of his fee request.   *See* ECF Nos. 174-178.   The City filed a supplement to its response (ECF No. 179), which included the affidavit of local attorney Guy Fortney ("Fortney"), opining that the total requested amount of fees was unreasonable.[2]

---

[1] The undersigned has an adequate record to determine the reasonableness of the award without a hearing, based on the District Court's Orders and the briefs and affidavits submitted by the parties, and therefore elects not to conduct an evidentiary hearing.   An evidentiary hearing would require both parties to expend additional resources and the issues are adequately presented by the current record.   *See Student Mktg. Grp., Inc. v. Coll. P'ship, Inc.*, 247 F. App'x 90, 103 (10th Cir. 2007) ("The determination of reasonableness and amount of attorneys' fees – and whether an evidentiary hearing would be helpful in its analysis – is generally left to the sound discretion of the district court.") (citing *Harris Mkt. Research v. Marshall Mktg. & Comm., Inc.*, 948 F.2d 1518, 1527 (10th Cir.1991)).

[2] Plaintiff elected not to file a supplemental reply or expert affidavit in support of its motion.   *See* ECF No. 173 (minutes from June 25, 2018, status conference) (permitting Plaintiff to file a supplemental reply or an expert affidavit within two weeks from the date Defendant's supplement was filed or to request additional time.).

## II.    Plaintiff's Requested Award and City's Objections

In his most recent submissions, Plaintiff seeks a total of $371,952.50 in fees.[3]   As a breakdown, Plaintiff seeks $351,975.00 in attorneys' fees (451.6 hours of time at $400 per hour for Louis W. Bullock; 215.2 hours at $350 per hour for Patricia W. Bullock; 306.5 hours at $300 per hour for Robert M. Blakemore; and 27.1 hours at $150 per hour for Tonya Thurman); and $19,977.50 in fees billed by three legal assistants (3.8 hours at $100 per hour for Nadine Hodge;[4] 95.5 hours at $125 per hour for Betty deJong;[5] and 76.6 hours at $100 per hour for Stephanie Baker).  Additionally, Plaintiff seeks $5,363.84 for expenses.[6]

The City objects to the Plaintiff's requested award and requests the Court enter an award of fees not greater than $162,138.75 and an award of expenses not greater than $1,609.15.  ECF No. 179 at 2-3.  The City bases its request for a substantial reduction of Plaintiff's requested award on five grounds: (1) hourly rates for Louis Bullock, Patricia Bullock, and Robert Blakemore are unreasonably high; (2) the requested number of hours is unreasonably high; (3) paralegal time spent on purely administrative tasks is not recoverable; (4) Plaintiff achieved only limited success, warranting a significant percentage reduction of the lodestar calculation; and (5) Plaintiff's

---

[3] This total fee request represents a calculation prepared by the undersigned based on records and briefing submitted by Plaintiff, as Plaintiff did not calculate a total proposed fee award.

[4] Plaintiff has withdrawn a request for 6.3 hours of billing time for Ms. Hodge.  *See* ECF No. 169 at 19.

[5] Plaintiff has withdrawn a request for 0.1 hours of billing time for Ms. deJong.  *See* ECF No. 169 at 19 n.11.

[6] In the Motion for Fees, Plaintiff originally requested $8,062.64 in expenses.  However, in the subsequently filed affidavit of Patricia W. Bullock, she states that $2,698.80 should be withdrawn from this request, as this amount was awarded by the Court Clerk in the Order Taxing Costs.  *See* ECF No. 157; ECF No. 174 at 9-10.

requested expenses are not sufficiently described and should also be reduced based on Plaintiff's limited success.[7]

## III.   Lodestar Calculation

In a Title VII case, the district court "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee."   42 U.S.C. § 2000e-5(k).   "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This calculation of the "lodestar figure" typically yields a presumptively reasonable attorney's fee, though the "presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010).   "In calculating the lodestar and determining a reasonable fee, a court should not consider whether the award will be paid from private or public funds." *Bishop v. Smith*, 112 F. Supp. 3d 1231, 1239 (N.D. Okla. 2015) (citation omitted).

With respect to a reasonable rate, courts must "determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1256 (10th Cir. 1998) (quotations omitted).   In making these determinations, the court may refer to "affidavits submitted by the parties and other reliable evidence of local market rates for civil rights litigation at the time fees are awarded." *Id.*   A plaintiff "must provide evidence of the prevailing market rate for similar services by lawyers of reasonably comparable skill, experience, and reputation in the relevant community." *Lippoldt v. Cole*, 468 F.3d 1204, 1224 (10th Cir. 2006) (quotations omitted).   If the

---

[7] The City initially objected to Plaintiff's Motion for Fees on the additional ground that no attorney affidavits were submitted in support of the fee request.   However, the undersigned permitted Plaintiff to submit affidavits in support of the fee request, and this objection is now moot.

court does not have adequate evidence of prevailing market rates, the court may also "use other relevant factors, including its own knowledge, to establish the rate." *Case*, 157 F.3d at 1257.

With respect to hours reasonably expended, the movant bears the burden of proving "the reasonableness of each dollar, each hour, above zero." *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) (quotations omitted). Courts must exclude from the calculation any hours that are "excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434. "Time records submitted in support of a fee request must reflect the same billing judgment as a bill to a paying client." *Bishop*, 112 F. Supp. 3d at 1239; *see also Hensley*, 461 U.S. at 434 ("Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.") (quotations omitted).

A.     **Hourly Rates**

The City contends Plaintiff's requested hourly rates for Louis Bullock ($400 per hour), Patricia Bullock ($350 per hour), and Robert Blakemore ($300 per hour) are unreasonable and submits that the following are reasonable rates for each attorney: Louis Bullock ($300 per hour), Patricia Bullock ($275 per hour), and Robert Blakemore ($250 per hour).[8] In support of its request, Plaintiff submits affidavits from each billing attorney and a Year 2016 Local Customary Rate Survey of Tulsa Law Firms ("Tulsa Rate Survey"), which was prepared by local attorney Robert Glass. *See* ECF No. 155 at Ex. 4.

Plaintiff has presented substantial evidence that all three requested hourly rates are reasonable and in line with the prevailing market rates for lawyers of comparable skill and experience practicing in the Tulsa area. Louis Bullock and Patricia Bullock are among the most experienced civil rights litigators in Oklahoma, having successfully represented large classes in significant civil rights cases such as *Johnson v. City of Tulsa*, 94-CV-39 (N.D. Okla.); *Battle v.*

---

[8] The City has no objection to the requested hourly rate for Tonya Thurman of $150 per hour.

*Anderson*, CIV-72-95 (E.D. Okla.); and *Homeward Bound v. Hissom*, 85-CV-437 (N.D. Okla.). Each has practiced law for over 40 years.   In their affidavits, Louis Bullock testified that his standard billing rate to fee-paying clients is $400 per hour (ECF No. 178 at ¶ 10),[9] and Patricia Bullock represented that her standard billing rate to fee-paying clients is $350 per hour (ECF No. 174 at ¶ 3).   The Bullocks' requested rates are at the top and middle range of the Tulsa Rate Survey for attorneys with 25 or more years of experience.   *See* ECF No. 155 at Ex. 4 (showing rates ranging from $125-$700 per hour for attorneys with 25+ years of experience, with a mean around $300-$350 per hour).   The undersigned finds that Louis Bullock's requested $400 rate, which is at the high end of the prevailing market scale, is reasonable based on his represented billing rates and years of civil-rights experience.   *See Johnson v. City of Tulsa*, No. 94-CV-39-H(M), 2003 WL 24015152, at *2 (N.D. Okla. Aug. 29, 2003) (awarding Mr. Bullock a rate "at the top of the market rate scale for a case of this kind").[10]   The undersigned finds that Patricia Bullock's requested $350 rate, which is in the middle of the prevailing market scale, is reasonable based on Patricia Bullock's represented billing rates and her years of civil-rights experience.

Robert Blakemore is a seasoned civil litigator with over 17 years of experience, having represented plaintiffs in a number of complex civil rights actions, including *Johnson v. City of Tulsa*, 94-CV-39 (N.D. Okla.).   *See* ECF No. 175.   His requested rate of $300 per hour is at the middle to high range of prevailing market rates in the Tulsa community for attorneys of his experience level.   *See* ECF No. 155, Ex. 4 (showing rates ranging from $200-$380 per hour for attorneys with 16-18 years of experience, with a mean around $250-$275 per hour).   Although

---

[9] In another fee application pending before United States District Judge John Dowdell in *Burke v. Glanz*, 11-CV-720-JED (N.D. Okla.), Mr. Bullock listed his standard rate as $400 per hour but requested only $350 per hour because he "had a limited role in the trial of that case."   ECF No. 178 at n.1.

[10] Fifteen years ago, in *Johnson*, the court awarded Mr. Bullock $250 per hour.   The $150 increase in rate is commensurate with increases in prevailing market rates.

most of Mr. Blakemore's work is contingent fee work, his current hourly billing rate is between $250 and $300 per hour. The undersigned finds that Mr. Blakemore's requested $300 rate is reasonable based on his billing rates and his years of civil-rights experience.

The City offered Fortney's opinion that these rates are excessive "[b]ased on [Fortney's] experience litigating civil rights case" and that the City's alternative rates "are more in line with the prevailing market rates in the community." ECF No. 179-1 at ¶ 15. The undersigned agrees that Fortney has significant experience trying civil rights cases in this district and has fully considered his proffered opinion as to rates, as well as all other opinions in his affidavit. However, weighing his opinion against the Tulsa Rate Survey submitted by Plaintiff, Plaintiff's counsels' affidavits, and general knowledge of prevailing market rates, the undersigned finds the requested rates to be reasonable. After full consideration of Fortney's opinion and the City's arguments, the undersigned recommends no reduction in the lodestar amount based on counsel's requested hourly rate.

**B.    Hours Expended**

The City also objects to the reasonableness of hours expended by Plaintiff's counsel on various tasks. This inquiry is governed by whether counsel "exercise[d] 'billing judgment' with respect to hours worked," making a "good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. In this regard, the Court considers "whether the attorney's hours were necessary under the circumstances" and "approach[es] this reasonableness inquiry much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (quotations omitted).

### 1.      Excessive Time

The City objects to billing "extensive and excessive time" for specific tasks: preparing the Amended Complaint, preparing and reviewing witness and exhibit lists, preparing proposed findings of fact and conclusions of law, and preparing the Motion for Fees.  In her affidavit, Patricia Bullock disputes that any time is excessive and states that, because her firm's practice often involves public interest cases where their fees "are subject to the review not only of opposing counsel but also the press and the public, [they] conservatively bill [their] time."  ECF No. 174 at 5 ¶ 5.[11]

#### a.      Amended Complaint

The City objects to 18.5 hours expended by Robert Blakemore preparing the Complaint, followed by 6.3 hours spent drafting an Amended Complaint shortly thereafter.  The undersigned does not find this amount of time to be excessive and therefore recommends no reduction of hours spent on this task.

#### b.      Witness and Exhibit Lists

The City objects to 18.4 hours spent by Patricia Bullock preparing a witness and exhibit list, followed by 4 hours spent reviewing the City's witness and exhibit list.  As Plaintiff points out, Plaintiff's exhibit list for trial included 65 exhibits (ECF No. 79), and the City's exhibit list for trial included 151 exhibits (ECF No. 81).  Given the large volume of exhibits listed for both sides in this case, the undersigned does not find this amount of time to be excessive and therefore recommends no reduction of hours spent on these tasks.

---

[11] Although she did not "keep a tally," Patricia Bullock "can confidently say that more than 100 hours of attorney time expended in this case was not included in this request."  *Id.*

### c.     Proposed Findings of Fact and Conclusions of Law

The City argues that 118.8 hours allegedly spent by Louis Bullock and 39.2 hours expended by Patricia Bullock preparing Proposed Findings of Fact and Conclusions of Law are excessive. The trial lasted three days, with both Louis Bullock and Patricia Bullock attending each day of trial.  Plaintiff's Proposed Findings of Fact and Conclusions of Law comprise 34 pages, with the Proposed Findings of Fact section including numerous transcript and exhibit citations.  *See* ECF No. 143.

As an initial matter, the undersigned has reviewed the billing records submitted by Plaintiff and finds Louis Bullock billed only 59.4 hours on this task between February 25, 2016, and March 30, 2016.  *See* ECF No. 155-1, at 17.  The City does not explain how it reached the number of 118.8 hours, nor can the undersigned determine how the City calculated this number.  While the undersigned agrees with the City that this task should not have taken 158 hours (nearly four 40-hour weeks), the billing records do not add up to this number.  Rather, the undersigned has identified 59.4 hours billed by Louis Bullock in preparing the Proposed Findings of Fact and Conclusions of Law and 39.2 hours spent by Patricia Bullock on the same task, for a total of 98.6 hours.

The Proposed Findings of Fact and Conclusions of Law were thorough, detailed, well-written, and likely of significant assistance to the District Court.  Drafting proposed findings with citations to the trial transcript is a time-consuming process, and the undersigned expects the City also spent substantial time on this task.[12]  However, the undersigned finds 98.6 total hours by two high-level attorneys who attended the trial to be slightly excessive and recommends a reduction of 19.4 hours from Louis Bullock's time.  A total of eighty hours by the two highest-level billing attorneys, both of whom attended trial, is a reasonable expenditure of time for this task.

---

[12] The City did not offer a comparator number of estimated hours that it spent on the same task.

Accordingly, the undersigned recommends a reduction of fees by $7,760.00, accounting for 19.4 hours of Louis Bullock's time.

### d.      Motion for Fees

The City objects to excessive time Plaintiff's counsel spent in preparing the instant Motion for Fees.  Louis Bullock billed 16.5 hours, Patricia Bullock billed 15.1 hours, and legal assistant Betty deJong billed 12.6 hours for preparing the Motion for Fees, which equals a fee request of $13,460.00.   Attorneys are generally entitled to "at least some compensation . . . for work reasonably expended on the fee application."  *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1206 (10th Cir. 1986).  Plaintiff's opening brief is 14 pages long, with approximately 60 pages of supporting exhibits, including detailed billing records for each timekeeper.  In addition, Plaintiff has filed a 20-page reply brief in support of the Motion for Fees (ECF No. 169) and five affidavits from timekeepers (ECF Nos. 174-178), for which Plaintiff's counsel have not billed any time.  In light of the significant time-span of this litigation and the large number of hours to review, the undersigned recommends no reduction of hours.

### 2.      Duplication of Services

The City also objects to billing for duplicate tasks.  Specifically, the City objects to time billed by one attorney in drafting an email and time billed by another attorney in reviewing the same email.  The City cites to several instances of this type of billing.  The billing entries highlighted by the City demonstrate Robert Blakemore exchanged emails with opposing counsel, and Louis Bullock billed for reviewing the exchanges.  The undersigned does not find these billing examples to be unreasonable or excessive.  It is reasonable for the lead lawyer on a case to remain informed about communications with opposing counsel regarding matters such as deposition scheduling and the motion for summary judgment.  The undersigned recommends no reduction of hours for these tasks.

### 3.   Interoffice Conferences and Emails

The City next objects to compensation for interoffice conferences and emails among staff members, arguing these entries were excessive and involved duplicate billing.  However, the examples of such billing identified by the City reveal no duplicate billing or excessive time billed for interoffice communications.  When counsel billed for interoffice communications, the records reflect that only one timekeeper billed for that time.  For example, on November 10, 2010, Louis Bullock billed 0.2 hours for "Conference with Bob Blakemore re: EEOC," but Robert Blakemore did not also bill for that conference.  *See* ECF No. 155-1 at 1, 25.  It is not poor billing judgment to bill for such interoffice communications if only one participant bills for that time.  *See Okla. Natural Gas Co. v. Apache Corp.*, 355 F. Supp. 2d 1246, 1262-63 (N.D. Okla. 2004) ("Obviously, lawyers working together on a case must communicate with each other and that communication may *spare* the client duplication of effort; however, multiple billing for interoffice conferences is problematic because multiple timekeepers are billing for the same work."); *cf. Henderson v. Horace Mann Ins. Co.*, 560 F. Supp. 2d 1099, 1118 (N.D. Okla. 2008) (reducing hours billed for interoffice conference when more than one lawyer billed for the conference time); *Team Sys. Int'l, LLC v. Haozous*, No. CIV-14-1018-D, 2016 WL 1057845, at *4 (W.D. Okla. Mar. 11, 2016) ("Multiple time keepers billing for the same work [at an interoffice conference] may warrant a reduction for duplication of effort.").

The only apparent "duplication" of time was 0.5 hours Louis Bullock spent working with legal assistant Stephanie Baker on December 16, 2013, to renumber trial exhibits.  *See* ECF No. 155-1 at 10; ECF No. 155-2 at 9.  In response, Plaintiff explains this time was appropriately billed for both Louis Bullock and Stephanie Baker, because Defendant's counsel had requested the trial exhibits be numbered in a particular way and the lawyer and legal assistant needed to work together

to accomplish the task efficiently.  The undersigned finds this explanation to be reasonable. Accordingly, the undersigned recommends no reduction of hours for these tasks.

### 4.    Communications with the Media

The City objects to 0.9 hours spent by Louis Bullock communicating with the media about this case.  In response, Plaintiff argues it is reasonable for lawyers involved in matters of public policy to charge for time spent explaining their client's position to the media.  Plaintiff further points out that Fortney, the City's named expert, has previously billed Tulsa County for time spent drafting materials for the *Tulsa World* newspaper.

In the Tenth Circuit, time spent communicating with the press is generally not recoverable. *See New Mexico Citizens for Clean Air & Water v. Espanola Mercantile Co.*, 72 F.3d 830, 835 (10th Cir. 1996) (affirming district court's elimination of press-related matters from fee award); *Longdo v. Pelle*, No. 15-CV-01370-RPM, 2016 WL 10591328, at *4 (D. Colo. Sept. 8, 2016) (denying request for fees spent on "media-related matters" where media communication was not necessary or helpful to the case); *cf. David C. v. Leavitt*, 900 F. Supp. 1547, 1557 (D. Utah 1995) (explaining that, although communications with media are not generally compensable, some press communications in class action lawsuit may be compensable if they contributed to communication with the class in a meaningful way).  Therefore, the undersigned recommends a reduction of 0.8 hours spent by Louis Bullock in communicating with the media on July 28, 2011 (0.3 hours), August 2, 2012 (0.2 hours), and April 1, 2015 (0.3 hours).[13]   Accordingly, the undersigned recommends a reduction in the lodestar amount by $320.00.

---

[13] The undersigned did not identify any entries to account for the final 0.1 of media communication time claimed by the City.

**C.      Paralegal Time Spent on Administrative Tasks**

The City objects to compensation for legal assistant time spent on administrative tasks.  In this regard, the City points to billing for tasks such as scanning, indexing, organizing, delivering documents, and making phone calls.  Plaintiff responds that the tasks performed by legal assistants in this case required the expertise and skill of a trained legal assistant and could not have been performed by a secretary or other clerical worker.  Plaintiff further responds that the task of making phone calls in this case was properly billable by a legal assistant and otherwise would have been performed by an attorney.  Nonetheless, Plaintiff agrees to withdraw his request for the majority of time billed by legal assistant Nadine Hodge.

The undersigned does not find the time entries billed by the three legal assistants in this case to be unreasonable.  It requires skill to index large volumes of documents for use in litigation.  The undersigned does not find the other disputed entries to be "clerical" in nature.  Accordingly, the undersigned recommends no reduction in the lodestar amount based on time billed by the legal assistants.

Based on the following conclusions regarding reasonable rates and hours, the undersigned's recommended lodestar calculation is $363,872.50, which reflects reduction in Plaintiff's requested lodestar of $7,760.00 for excessive time billed and $320.00 for nonrecoverable time billed.

**IV.      "Degree of Success" Reduction to the Lodestar**

At trial, Plaintiff lost his Title VII race discrimination claim and obtained approximately 40% of the equitable relief requested on his successful Title VII retaliation claim.[14]  Prior to trial,

---

[14] Plaintiff requested reimbursement for 1,111 total hours of leave but was only awarded 453 hours of leave.  According to the City, this translates into a $50,339.41 requested cash value, versus a $20,525.43 awarded cash value.  *See* ECF No. 160 at 3 n.1.  In his brief, Plaintiff admits this aspect of the equitable award was approximately 40% of the maximum amount sought.  ECF No. 169 at 8 n.5.

the Court either dismissed or granted judgment on all § 1983 claims against the City and the individual officers.  Describing Plaintiff's success as "nominal" and the requested fee award as excessive in relation to the overall success obtained, the City requests a 70% reduction of all attorney time and expenses incurred prior to the Court's summary judgment ruling on March 30, 2015, to account for Plaintiff's partial success.  ECF No. 179 at 2.  Conversely, Plaintiff argues that all claims were related, that he achieved an "excellent result," and that no reduction is warranted because "he fully vindicated his civil rights" and "received fully compensatory relief for [the City's] retaliation and a clean employment record."  ECF No. 169 at 5-6.

When the prevailing party succeeds on only some of his claims, determination of a reasonable fee award requires the court to consider two additional questions: "(1) whether the plaintiff's successful and unsuccessful claims were related; and (2) whether the plaintiff's overall level of success justifies a fee award based on the hours expended by plaintiff's counsel." *Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173, 1176-77 (10th Cir. 2010) (citation omitted).

### A.    Relatedness of Successful and Unsuccessful Claims

In some civil rights cases, "a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories." *Hensley*, 461 U.S. at 434.  In such a suit, an attorney's "work on one claim will be unrelated to his work on another claim" and "must be treated as if they had been raised in two separate lawsuits."  *Id.* at 435 (explaining that "congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits").  The Supreme Court explained:

> It may well be that cases involving such unrelated claims are unlikely to arise with great frequency.  Many civil rights cases will present only a single claim.  In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories.  Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims.  Instead the district court should focus on the significance of the overall

relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Id.* "In the context of fee awards, [the Tenth Circuit] has held that claims are related if they are based on a common core of facts or are based on related legal theories." *Flitton*, 614 F.3d at 1177 (citation omitted).

All claims against the City and the individual Defendants, whether successful or unsuccessful, were based on a common core of facts. Plaintiff's successful Title VII retaliation claim, and his unsuccessful Title VII discrimination claim, were clearly interrelated and stemmed from the order that Plaintiff march in the Parade. Both Title VII claims depended on a finding that Evans' order was racially motivated and unlawful.

In the summary judgment opinion, the Court expressly stated that Plaintiff's § 1983 equal protection claim against the City "overlap[ped]" with his Title VII race discrimination claim, but that the § 1983 claim also required a showing of a custom or policy of discriminatory employment practices. *See* ECF No. 101 at 15-16. The undersigned rejects the City's contention that the "municipal policy" element of the § 1983 claim renders it wholly unrelated to the successful Title VII claim for purposes of the fee award; instead, the § 1983 equal protection claim arose from the same common core of facts and involved a significant degree of overlapping proof and elements. Similarly, although Plaintiff's § 1983 First Amendment claims were grounded on a legal theory involving protected employee speech, the claims were also premised on Evans' order to march in the Parade and subsequent retaliation. Claims against the individual officers also arose from the same set of facts – namely, Evans' order to march in the Parade and Larsen and Jordan's ratification of and refusal to overturn such decision. This is not a case where Plaintiff's unsuccessful claims against the City and individual officers were "distinct in all respects from his successful claims," such that hours spent on any unsuccessful claims should be severed and treated as if they arose in a separate lawsuit. *See Hensley*, 461 U.S. at 435.

## B.      Overall Level of Success

Where the successful and unsuccessful claims are related, a court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435.  If a plaintiff "has obtained excellent results, his attorney should recover a fully compensatory fee," which normally "will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Id.*[15]  "In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.*

Conversely, if a plaintiff "has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436.  "This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith" because "Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill." *Id.*  In every case, "the most critical factor is the degree of success obtained." *Id.*  As explained by the Tenth Circuit, *Hensley* requires a court to "make a qualitative assessment to determine what less-than-perfect results are 'excellent,' justifying full recovery, or to what extent plaintiffs' 'limited success' should effect a reduction in the lodestar." *Bangerter*, 61 F.3d at 1511.

"There is no precise rule or formula" for determining an appropriate reduction to a lodestar amount based on limited success. *Hensley*, 461 U.S. at 436.  "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436-37.  However, a court may abuse its discretion by utilizing a

---

[15] Plaintiff does not request any enhancement of the lodestar in this case.

"mathematical approach" premised solely on a ratio of won to lost claims.  *See Bangerter*, 61 F.3d at 1511 (reversing district court's reduction of lodestar by 75% where court had "merely listed successful and unsuccessful claims" rather than "demonstrating that it qualitatively considered the relationship between the amount of the fee award and the results").  The Tenth Circuit has also rejected a mathematical reduction premised solely on a ratio of won to lost claims against multiple defendants.  *See Harvey Barnett, Inc. v. Shidler*, 200 F. App'x 734, 747-48 (10th Cir. 2006) (finding district court abused its discretion by reducing plaintiff's fee request by one-third, where plaintiff's case involved related claims and a common core of facts but plaintiff only succeeded against one of three defendants) (citing *Wayne v. Village of Sebring*, 36 F.3d 517 (6th Cir. 1994)).

As an initial matter, to the extent the City requests a "limited success" reduction based on Plaintiff's partial success at trial, the undersigned rejects such argument.  Although Plaintiff recovered less equitable relief than requested, he received: (1) a declaration that the order to march in the Parade was racially motivated; (2) reinstatement of all leave time the Court found he had lost due to his assignment to the fourth shift (an award valued at $20,525.43); and (3) expungement of a retaliatory evaluation from his file.  The Court awarded less leave time than requested so that Plaintiff would be made "whole," not because the Court found the City to be less culpable than Plaintiff claimed.[16]  As argued by Plaintiff, he achieved greater equitable relief than he initially requested from his superiors at the City and Mayor Bartlett, *see* ECF No. 169, at 6-7, and he received a judicial declaration that the order to march in the Parade was racially motivated and "repugnant," *see* ECF No. 146, at 12-13, 14 n.3.  Further, Plaintiff likely would have received the same relief had he also prevailed on the Title VII race discrimination claim at trial.  Therefore, the undersigned does not recommend any reduction based on Plaintiff's "partial success" at trial.

---

[16] The Court denied Plaintiff's request for 658 additional hours of leave because those hours consisted of "use it or lose it" leave, which he would have had to use regardless of his transfer to the fourth shift.  *See* ECF No. 146 at 21.

The undersigned does recommend a 10% reduction of hours billed through March 30, 2015, to account for Plaintiff's lack of success on the § 1983 claims against the individual Defendants.  Although related to the successful claims, the Court finds the City's lack of success against any individual officer to warrant a very limited "partial success" reduction in the lodestar.  Although the City requests a 70% reduction of all time spent prior to March 30, 2015, this requested percentage reduction is grossly excessive, considering: (1) the interrelatedness of all claims; (2) all three individual Defendants testified at trial; and (3) the vast majority of time expended necessarily overlapped with time spent prosecuting the successful claim against the City. The undersigned's selected percentage is not a "mathematical approach" based on successful versus unsuccessful claims or dismissed versus non-dismissed defendants.  Instead, it reflects an approximation of the limited extent to which Plaintiff's lack of success on his § 1983 claims against the individual Defendants should effect an overall reduction in the lodestar.  The undersigned finds this limited reduction of pre-trial time entries appropriate, considering all five claims originally asserted against all four Defendants, time devoted to the litigation as a whole, and Plaintiff's general overall success in relation to the total hours expended.  *See Bangerter*, 61 F.3d at 1511 (remanding for court to demonstrate "its assessment of the losses in light of the time necessarily devoted to the litigation as a whole and the general overall success of plaintiffs").  The undersigned further recommends elimination of time devoted to tasks pertaining solely to the individual Defendants, such as time spent responding to the individual Defendants' motions to dismiss.

Elimination of time entries pertaining solely to the individual Defendants results in a reduction of $9,530.00 (3.3 hours for Louis Bullock; 26.6 hours for Robert Blakemore; 1.6 hours for Betty deJong; and 0.3 hours for Stephanie Baker).  After removal of those entries, the undersigned has found that Louis Bullock reasonably expended 172.5 hours, Patricia Bullock billed 32.7 hours, Robert Blakemore billed 279.9 hours, Nadine Hodge billed 3.8 hours, Betty

deJong billed 33.4 hours, and Stephanie Baker billed 76.3 hours for the period prior to and including March 30, 2015.  A ten percent reduction of this time results in a total reduction of $17,660.00 from the lodestar calculation.  Therefore, the undersigned recommends a total reduction of $27,190.00 from the fee award to account for Plaintiff's lack of success against any individual Defendant.

Although the recommended fee award of $336,682.50 substantially exceeds the $20,525.43 monetary value of Plaintiff's equitable award, this does not mandate any greater reduction of the lodestar.  *See Brandau v. State of Kan.*, 168 F.3d 1179, 1181 n.1, 1183 (10th Cir. 1999) (upholding attorney fee award of $40,398.75 where plaintiff received $1.00 on her sexual harassment claim and lost on her retaliation and constructive discharge claims).  Throughout its briefing, the City has attempted to characterize Plaintiff's relief as a "nominal result" that is dwarfed by Plaintiff's excessive fee request.  However, Plaintiff received more than a nominal victory and achieved equitable relief against the City.  The City fought this case doggedly for several years, all the way to trial, which drove up the litigation costs and resulted in a sizeable recommended fee award.  A party "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 581 n.11 (1986) (quotations omitted).  The total fee recommended by the undersigned, although significantly greater than the value of relief obtained, is neither excessive nor unreasonable in light of the time expended and relief obtained in this litigation.

## V.   Plaintiff's Requested Expenses

Plaintiff seeks $5,363.84 for expenses.  The City objects to Plaintiff's overall request for expenses, arguing that Plaintiff's breakdown of costs is not tied to specific tasks.  For example, Plaintiff requests $2,050.99 in charges from Westlaw for online legal research but does not provide any information other than the date and the charge.  The undersigned finds Plaintiff's description

of expenses to be adequate and does not recommend any reduction of expenses due to a lack of specificity. Plaintiff's counsel verified all expenses and Westlaw charges were incurred in prosecuting this matter, *see* ECF No. 174, and the undersigned finds this verification sufficient to support the requested expenses.

The City further objects to expenses incurred in litigating Plaintiff's unsuccessful claims. The City requests a reduction of Plaintiff's expenses by 70% to account for charges that are unnecessary or unrelated to the claims against the City. For the reasons explained above in Part IV, the undersigned finds that all claims are related, and the Court does not recommend any reduction in expenses. Therefore, the undersigned recommends an expense award of $5,363.84.

## RECOMMENDATION

The undersigned **RECOMMENDS** that Plaintiff's Application for Attorney Fees and Expenses (ECF No. 155) be **GRANTED** and that Plaintiff be awarded $336,682.50 as a reasonable attorney's fee and $5,363.84 in reasonable expenses, for a total award of $342,046.34.

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by November 6, 2018.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or

recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).  Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

      **SUBMITTED** this 23rd day of October, 2018.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**