**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

WALTER E. BUSBY, JR.,     )
            )
     Plaintiff,   )
            )  Case No. 11-CV-447-JED-JFJ
v.           )
            )
CITY OF TULSA,     )
            )
     Defendant.  )

## OPINION AND ORDER

The Court has for its consideration plaintiff's motion for attorney's fees and expenses (Doc. 155), the Report and Recommendation (Doc. 180) (R&R) of United States Magistrate Judge Jodi F. Jayne regarding that motion, and the defendant's Objection to Judge Jayne's R&R (Doc. 181).

Judge Jayne's R&R recommends that the plaintiff's motion be granted in the amount of $336,682.50 in attorney fees and $5,363.84 in expenses, for a total award of $342,046.34. The defendant objects to the R&R based upon arguments that the recommendation includes "an unreasonably high hourly rate" for the plaintiff's counsel's services and "recommends an award which would compensate [plaintiff] for an unreasonable number of hours, many of which were expended on claims on [sic] which were ultimately dismissed." (Doc. 181 at 2).

The Court must determine de novo any part of the R&R that has been properly objected to, and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). The Court has conducted a de novo review, fully considered the objections raised by the defendant, and determines that the objections should be denied and the R&R should be accepted in full. The Court previously conducted a bench trial on the plaintiff's claims in this case and entered its

Opinion and Order with Findings of Fact and Conclusions of Law (Doc. 146), followed by Judgment (Doc. 156). A full factual background with respect to the claims tried will not be repeated here, as it is set out in the Court's prior order. (*See* Doc. 146).

"[I]n its discretion," the Court in a case under Title VII "may allow the prevailing party" a "reasonable attorney's fee." 42 U.S.C. § 2000e-5(k). To obtain attorney's fees, the plaintiff must establish that he was the "prevailing party" in the proceeding and that his fee request is reasonable. *Flitton v. Primary Residential Mortgage, Inc.*, 614 F.3d 1173, 1176 (10th Cir. 2010). The beginning point for determining the amount of a reasonable fee is a calculation of the lodestar, which "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The defendant acknowledges that the plaintiff is the prevailing party, but contends that the fee award recommended in the R&R is not reasonable "in light of the circumstances of this case." (Doc. 181 at 4-5). Each of the defendant's arguments will be discussed below.

## I. Hourly Rates

"Hourly rates must reflect the prevailing market rates in the relevant community." *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) (citation omitted). The plaintiff seeking fees is required to "provide evidence of the prevailing market rate for similar services by 'lawyers of reasonably comparable skill, experience, and reputation' in the relevant community." *Lippoldt v. Cole*, 468 F.3d 1204, 1224 (10th Cir. 2006) (citations omitted). As is frequently the practice in this District, the plaintiff attached a 2016 survey of customary fee rates in the Tulsa legal market (*see* Doc. 155-4), and Judge Jayne considered that survey (*see* Doc. 180 at 6-8).

The defendant first argues that $300 per hour for Robert Blakemore, who is represented to have 17 years of experience, is excessive. The defendant asserts that, for attorneys with that length of experience, the local rate survey reflects customary rates from $200 to $380 per hour, with the mean "around $250-$275 per hour." (Doc. 181 at 5). The defendant submitted an Affidavit of Guy Fortney, a civil litigator in Tulsa, who opined that an hourly rate of $250 for Mr. Blakemore would be "more in line with prevailing market rates" for someone with Mr. Blakemore's experience. (*See* Doc. 179-1 at ¶ 15). Mr. Blakemore has frequently appeared and been involved in lengthy civil rights trials and other litigation before the undersigned, and the Court knows him to be one of the premier civil rights lawyers in this community. Mr. Fortney and Mr. Blakemore have for years been on opposing sides of an extensive amount of civil rights litigation, and the Court likewise knows and regards Mr. Fortney to be an excellent, experienced, knowledgeable, and reputable civil rights litigator such that his opinion does carry weight with this Court. However, under the circumstances and in light of Mr. Blakemore's extensive civil rights litigation experience as well as the exemplary quality of his work, the Court finds that the requested $300 per hour rate for Mr. Blakemore is reasonable.

The defendant similarly challenges the $350 and $400 hourly rates for Patricia Bullock and Louis Bullock, which Judge Jayne utilized in calculating the recommended fee award. Defendant points out that the local rate survey for attorneys with 25 or more years of experience reflects a common attorney fee range of $300 to $350 per hour. (Doc. 181 at 6; *see* Doc. 155-4). However, the rate survey reflects rates for attorneys with 25 plus years of experience of up to $700 per hour, including rate ranges reported by multipole firms, for attorneys with that level of experience, of in the range of $400 to $675 per hour. (Doc. 155-4). The survey's highest category is "25+ years' experience." (*See id.*). The Bullocks each have over 40 years of experience, and they are among

the most experienced civil rights litigators in this state. The requested hourly rates of $350 for Patricia Bullock and $400 for Louis Bullock are reasonable under the circumstances and in light of their experience, skill, and reputation in the legal community.

## II. Number of Hours Expended

The defendant next challenges the number of hours that Judge Jayne recommends be awarded in her lodestar calculation. (Doc. 181 at 7). The defendant argues that the number of hours expended is excessive in light of the fact that the plaintiff did not ultimately prevail on all claims. The plaintiff filed his Complaint on July 18, 2011, naming the City of Tulsa, Chief of Police Charles Jordan, and Walter Evans, who was at the time a Major with the Tulsa Police Department, as defendants. (Doc. 2). Plaintiff asserted disparate treatment and retaliation claims under Title VII, claims for violations of his First Amendment rights, and a claim for a violation of Equal Protection rights under the Fourteenth Amendment. (*See id.*). Plaintiff filed a First Amended Complaint on August 9, 2011, adding Deputy Chief of Police Dennis Larsen as a defendant and reasserting the claims set forth in the original Complaint. (Doc. 7). The Court (District Judge Gregory K. Frizzell then-presiding over the case) granted Deputy Chief Larsen's motion to dismiss and dismissed him from the suit. (Doc. 25).

After the case was reassigned to the undersigned, the Court granted in part and denied in part a motion for summary judgment filed by the defendants. The Court denied the City's motion for summary judgment on plaintiff's Title VII claims for race discrimination and retaliation, but granted the summary judgment motion on plaintiff's Equal Protection and First Amendment claims and dismissed the claims against Chief Jordan and Walter Evans. (Doc. 101).

Following trial, the Court determined that the plaintiff had established his Title VII retaliation claim. (Doc. 146). However, the Court found and concluded that the plaintiff did not establish one of the elements of his disparate treatment claim. (*Id.*). Specifically, the Court determined that, although the plaintiff's "race was a motivating factor in the directive to march in the [Martin Luther King, Jr.] parade and the related denial of holiday leave" (*id.* at 12), "being ordered to march in the parade, and being denied leave for two hours to avoid marching in that parade, did not constitute a *significant change* in [plaintiff's] employment status, benefits, or the conditions of his employment," such as would satisfy the "adverse employment action" element under Title VII jurisprudence (*id.* at 13-14). Despite that determination, the Court noted that police department orders based upon race are "repugnant" and that such "ongoing orders" based on an officer's race – rather than the isolated occurrence at issue in the case – might well constitute a significant change or alteration in terms of employment. (*Id.* at 14, fn.3). The Court ordered that the defendant compensate the plaintiff for 389 acquired vacation hours and 64 hours of leave that he utilized from his capped acquired vacation and sick leave accounts as a result of the retaliatory transfer to fourth shift. (*Id.* at 20-22). The plaintiff had requested reimbursement for a total of 1,111 hours of leave time, but the Court rejected that proposed calculation based upon evidence of the manner in which the plaintiff's leave time was acquired and utilized. (*See id.* at 21).

Defendant argues that the Court should substantially reduce the fees to be awarded because the individual defendants and certain of plaintiff's legal claims were dismissed, the Court ultimately found in favor of plaintiff on only one of the two Title VII claims that were tried, and the Court did not award all of the hours of employment leave requested by plaintiff. Judge Jayne agreed that certain reductions were appropriate, but rejected the defendant's request for a massive reduction in fees for the dismissed claims and defendants. Specifically, the R&R includes a

recommendation that the Court reduce by ten percent the hours billed through March 30, 2015, which is the date on which the undersigned granted summary judgment in favor of the defendants on the plaintiff's Equal Protection and First Amendment claims against the individual defendants. Judge Jayne further recommends elimination of time entries pertaining solely to the claims against the individual defendants who were dismissed from the action by dismissal or summary judgment, amounting to a reduction of $9,530.00 in the amount of fees sought by plaintiff. A ten percent reduction for the remaining time expended through March 30, 2015 would then result in a further $27,190.00 reduction from the total fees requested. (Doc. 180 at 19-20). The defendant argues that the Court, upon its de novo review, should reduce its fee award by more than the ten percent recommended in the R&R. (*See* Doc. 181 at 11-12). In briefing on the fee motion, the defendant requested a 70% reduction in time for hours billed through March 30, 2015. (Doc. 160).[1]

Based upon a de novo review, the Court determines that the recommended reductions are appropriate and will result in a reasonable fee award. Although the claims against the individual defendants were dismissed and summary judgment was granted on the plaintiff's First Amendment and Equal Protection theories, all of those legal theories were interrelated and almost entirely dependent upon the same set of facts and the same evidence. Claims are related if they are based on a common core of facts or are based on related legal theories. *Flitton*, 614 F.3d at 1177.

---

[1]     Judge Jayne also recommended reductions in the total hours recorded for preparation of the plaintiff's Proposed Findings and Conclusions, reducing Mr. Bullock's time by 19.4 hours for that task. The Court has reviewed the billing records and the summary of hours for that task and finds that reduction, and the resulting number of hours for that task, to be reasonable and appropriate. The R&R also includes a recommendation to reduce by 0.8 hours Mr. Bullock's hours for time spent communicating with the media about his client's case. (Doc. 180 at 13) (citing *New Mexico Citizens for Clean Air & Water v. Espanola Mercantile Co.*, 72 F.3d 830, 835 (10th Cir. 1996)). The Court finds that reduction appropriate as well.

All claims asserted by the plaintiff in the original and amended complaints were based on the same core facts: that plaintiff was ordered to march in a parade based upon his race; that he was denied holiday leave based on his race; and that he was retaliated against after he complained of racial discrimination, which was protected activity. (*See, e.g.,* Doc. 7). While claims based on different legal theories were presented in the complaints, each of those legal theories were premised upon the same core facts. The recommended 10% reduction in fees prior to the Court's order on summary judgment will appropriately and reasonably account for any time expended specifically on legal theories that were unsuccessful in summary judgment, and the reduction related to specific time entries on work regarding individual defendants who were dismissed is also appropriate and sufficient to render the total fee award reasonable. Even though the individual defendants were dismissed, each of them testified at trial, and the Court rejects the defendant's argument that a significant amount of time was unnecessarily expended in discovery as to them. Those individuals were key witnesses as to the events underlying the plaintiff's claims against the City of Tulsa, even if the claims against them were dismissed.

The Court also does not consider plaintiff's success to have been "limited" to such an extent as to require further reduction of the lodestar calculation. Plaintiff received a determination that the order to march in the parade was motivated by his race. The Court ordered the reinstatement of all leave time he lost as a result of the retaliatory move to the fourth shift and ordered the retaliatory performance evaluation to be expunged from his employment file. (Doc. 146). Those determinations were contrary to defendant's position throughout the extensively-litigated case. Although the Court did not ultimately find that the plaintiff had established that being ordered to march in the parade and denied a few hours of holiday leave constituted significant changes in employment as required to be adverse employment actions, the Court noted that such racially-

motivated conduct was "repugnant" and that continuing orders based on the plaintiff's (or any other officer's) race would more likely constitute a significant change in employment. (*Id.* at 13-14, fn.3). As a result, while the plaintiff did not receive a monetary award on the disparate treatment race discrimination claim, the Court found it to be a close call only because the racially-motivated parade order was an isolated event. While not a direct order or award, the Court's factual analysis and finding of "repugnancy" may be expected to have a secondary benefit of making it less likely the police department would treat the plaintiff in such a way in his continuing employment.

### III. Plaintiff's Expenses

Defendant objects to the recommendation that plaintiff be awarded $5,363.84 in expenses.[2] The defendant contends that the expenses are not supported by appropriate backup receipts and invoices. (Doc. 181 at 14). Judge Jayne recommends that there be no reduction for lack of specificity. (Doc. 180 at 20-21). The Court has examined the plaintiff's submitted exhibits and his counsel's breakdown of expenditures. The expenditures are sufficiently specific and supported by the plaintiff's evidentiary submissions. (*See* Doc. 155-3, Doc. 174 at ¶ 9). Plaintiff's counsel submitted a sworn affidavit that the requested expenses were incurred in this case. (Doc. 174).

### IV. Conclusion

Based upon the Court's de novo review of the record in this case, the Court agrees with the analysis in the R&R and **accepts** the R&R (Doc. 180). Accordingly, the plaintiff's Motion for Attorney Fees and Expenses (Doc. 155) is **granted**, the defendant's Objection (Doc. 181) is

---

[2] Some of the expenses sought in the plaintiff's motion overlapped with costs sought in the plaintiff's Bill of Costs. As a result, the plaintiff subsequently updated his request for expenses, reducing it from the $8,062.64 originally sought to a total of $5,363.84. (*See* Doc. 174 at ¶ 9).

**denied**, and the plaintiff is awarded fees in the amount of $336,682.50 and expenses in the amount of $5,363.84. The total fee award is based upon the calculations described in the footnote below.[3]

SO ORDERED this 11th day of January, 2019.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

---

[3] **Louis Bullock**: Plaintiff requested fees for 451.6 hours of Mr. Bullock's time, from which 19.4 hours were deducted from his time for work on the Proposed Findings of Fact and Conclusions of Law, 0.8 hours were deducted for communications with media, 3.3 hours were deducted for work attributable solely to the individual defendants, and 17.25 hours were deducted as part of an overall 10% reduction in the fees incurred prior to the entry of the Court's summary judgment order. After deductions, the portion of the fees attributable to Mr. Bullock's work is comprised of 410.85 hours, multiplied by his $400 hourly rate, for a total of **$164,340**.

**Patricia Bullock:** Plaintiff requested fees for 215.2 hours of Patricia Bullock's time, from which 3.27 hours were deducted as part of an overall 10% reduction in the fees incurred prior to the entry of the summary judgment order. After the deduction, the portion of the fees attributable to Mrs. Bullock is 211.93 hours, multiplied by her $350 hourly rate, for a total of **$74,175.50**.

**Robert Blakemore:** Plaintiff requested fees for 306.5 hours of Mr. Blakemore's time, from which 26.6 hours were deducted for work attributable solely to the individual defendants and 27.99 hours were deducted as part of the 10% reduction in the fees incurred prior to the entry of the summary judgment order. After the deductions, the portion of the fees attributable to Mr. Blakemore is 251.91 hours, multiplied by his hourly rate of $300, for a total of **$75,573**.

**Tonya Thurman:** Plaintiff requested fees for 27.1 hours of Ms. Thurman's time, and no reductions are ordered. Her hourly rate of $150 multiplied by the hours she expended results in a total of **$4,065** in attorney fees attributable to Ms. Thurman's work.

**Legal Assistants:** The 3.8 hours sought for Nadine Hodge's time were reduced by 0.38 hours as part of the overall 10% reduction of time prior to the entry of summary judgment, for a total of 3.42 hours, multiplied by her hourly rate of $100, totaling **$342**. The plaintiff sought fees for 95.5 hours expended by Betty deJong, from which 1.6 hours were reduced for work solely relating to dismissed individuals and 3.34 hours were reduced as part of the overall 10% reduction for pre-summary judgment work, resulting in 90.56 hours, multiplied by Ms. deJong's $125 hourly rate, for a total of **$11,320** attributable to her work. Plaintiff sought 76.6 hours for work done by Stephanie Baker, from which 0.3 hours were reduced for work attributable solely to the dismissed individuals and 7.63 hours were reduced by virtue of the 10% reduction for work done prior to summary judgment. That results in a total of 68.67 hours, multiplied by the $100 hourly rate for Ms. Baker, for **$6,867** in fees from her work in the case.